UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| STELLA L. HICKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:15-CV-189-TAV-HBG |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of the Plaintiff's Motion for Judgment on the Administrative Record and Memorandum in Support [Docs. 16 & 17] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 18 & 19]. Stella L. Hicks ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On January 23, 2012, the Plaintiff filed an application for supplemental security income ("SSI"), claiming a period of disability which began August 1, 2000. [Tr. 126]. After her application was denied initially and upon reconsideration, the Plaintiff requested a hearing. [Tr. 68]. On September 18, 2013 a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 27-55]. Following the hearing, the Plaintiff moved to amend her onset date to January 23, 2012, and the ALJ granted her request. [Tr. 14, 125]. On December 31, 2013, the ALJ found that the Plaintiff was not disabled. [11-26]. The Appeals Council denied the

Plaintiff's request for review [Tr. 1-5]; thus, the decision of the ALJ became the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on April 29, 2015, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I.     ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since January 23, 2012, the application date and amended alleged onset date (20 CFR 416.971 *et seq*.).
>
> 2. The claimant has the following severe impairments: diabetes mellitus, left shoulder pain and tenderness, and diminished visual acuity (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment of combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c). Function by function, the claimant is able to lift and carry 50 pounds occasionally and 25 pounds frequently, and is able to sit, stand and walk 2 hours in an 8-hour workday at one time without interruption for a total of 8 hours a day for an 8 hour workday. The claimant is continuously able to engage in manipulative activities except cannot engaged in overhead reaching with the left upper extremity and is occasionally able to engage in reaching with the left upper extremity. The claimant is able to engage in manipulative activities except cannot engage in overhead reaching with the left upper extremity and is occasionally able to engage in reaching with the left upper extremity. The claimant is able to

2

engage in continuous operation of foot controls and postural activities. The claimant is restricted from engaging in work requiring normal depth perception and binocular vision. The claimant does not have any communicative or environmental limitations.

5. The claimant is capable of performing past relevant work as a home attendant. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6. The claimant has not been under a disability, as define in the Social Security Act, since January 23, 2012, the date the application was filed (20 CFR 416.920(f)).

[Tr. 16-22].

## II. DISABILITY ELIGIBILITY

This case involves an application for SSI benefits. To qualify for SSI benefits, an individual must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied

3

for work.

42 U.S.C. § 1382c(a)(3)(B); see also 20 C.F.R. § 4015.905(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Id. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial

4

evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. 42 U.S.C. § 405(g); Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citing Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981)) (internal citations omitted).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) (citing Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972)).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).

5

On review, the plaintiff "bears the burden of proving his entitlement to benefits." <u>Boyes v. Sec'y. of Health & Human Servs.</u>, 46 F.3d 510, 512 (6th Cir. 1994) (citing <u>Halsey v. Richardson</u>, 441 F.2d 1230 (6th Cir. 1971)).

**IV.    POSITIONS OF THE PARTIES**

On appeal, the Plaintiff asserts that the ALJ committed three assignments of error. First, the Plaintiff contends that the ALJ failed to properly weigh the opinions of consultative examiners Jeffrey Summers, M.D., and Elizabeth Hartmann, M.D., when he assigned controlling weight to Dr. Summers' opinion instead of Dr. Hartmann's opinion. [Doc. 17 at 8-13]. Second, the Plaintiff alleges that the ALJ's credibility determination is unsupported by substantial evidence because the ALJ misrepresented the evidence of record and ignored certain activities the Plaintiff had difficulty performing. [<u>Id.</u> at 13-15]. Lastly, the Plaintiff argues that the ALJ's step four determination is unsupported by substantial evidence because the ALJ relied upon testimony from a vocational expert ("VE") who responded to a hypothetical question that did not accurately portray all of the Plaintiff's physical limitations. [<u>Id.</u> at 15-17].

The Commissioner responds that the ALJ appropriately weighed and evaluated the opinion evidence and properly accorded little weight to Dr. Hartmann's opinion as it was inconsistent with the evidence. [Doc. 19 at 11-13]. In addition, the Commissioner maintains that the ALJ's credibility determination is supported by substantial evidence because the ALJ articulated several bases, supported by the record, for discounting the Plaintiff's subjective complaints. [<u>Id.</u> at 6-8]. Finally, the Commissioner argues that the ALJ only included limitations in the hypothetical question that were credible, and therefore, reliance on the VE's response was appropriate. [<u>Id.</u> at 14-15].

## V. ANALYSIS

The Court will address the Plaintiff's allegations of error in turn.

### A. Consultative Examiners' Opinions

The Plaintiff challenges the weight assigned to each consultative examination, arguing that the ALJ should have assigned greater weight to the opinion of Dr. Hartmann instead of Dr. Summers. [Doc. 17 at 8-13].

Dr. Summers performed a consultative examination on December 7, 2009, at which time the Plaintiff reported problems with her diabetes and left shoulder. [Tr. 293]. In regard to her left shoulder, the Plaintiff complained of stiffness, throbbing, and aching pain, difficulty elevating her left arm overhead, and reaching, pulling, lifting, or carrying greater than 10 pounds. [Id.]. The Plaintiff reported a diagnosis of tendonitis and modest improvement with anti-inflammatory medication. [Id.]. Upon examination, Dr. Summers found that the Plaintiff's muscle strength was 5/5 bilaterally, she had full range of motion in all joint areas except her left shoulder, her grip strength was normal, and she ambulated normally. [Tr. 295]. Dr. Summers concluded that the Plaintiff "will have difficulty elevating the left arm overhead on a frequent basis as well as reaching/pushing/pulling and lifting/carrying greater than 10 lbs. with her left upper extremity." [Id.].

Accompanying his narrative report, Dr. Summers completed a form entitled "Medical Source Statement of Ability to Do Work-Related Activities (Physical)," wherein he answered a variety of multiple-choice questions. [Tr. 297-303]. Dr. Summers opined that the Plaintiff could lift or carry up to 10 pounds continuously, up to 20 pounds frequently, and up to 50 pounds occasionally, and she could sit, stand, and walk for eight hours total, but only for two hours at one time without interruption. [Tr. 297-98]. In regard to the Plaintiff's hands and feet, Dr.

7

Summers found that the Plaintiff could continuously reach, including overhead, throughout the day with her right hand, but could only reach occasionally with her left hand and never overhead, she could continuously handle, finger, feel, and push/pull with both hands, and she could continuously use both feet to operate foot controls. [Tr. 298-99]. Dr. Summers found no postural or environmental limitations and noted that the Plaintiff was capable of performing daily living activities such as shopping, cooking, and personal care. [Tr. 299-301].

The Plaintiff underwent a second consultative examination on March 24, 2012, with Dr. Hartmann. [Tr. 350-55]. At that time, the Plaintiff related a diagnosis of hypertension and diabetes mellitus, which was stabilized with medication. [Tr. 350]. The Plaintiff reported she could lift 25 pounds at one time and 10 pounds repeatedly, walk and sit at one time for 30 minutes and stand at one time for an hour, and care for her personal hygiene as well as cook and clean on her own. [Id.]. Upon examination, the Plaintiff had normal range of motion in her cervical and dorsolumbar spine, shoulders, elbows, hips, knees, wrists, and ankles, full muscle strength throughout including grip, normal gait and station, and was able to perform heel-to-toe ambulation, stand on one leg without any abnormalities, and rise from a seated position without the use of her arms. [Tr. 402-03]. Dr. Hartmann concluded that in an eight-hour day, the Plaintiff could continuously lift and carry up to 10 pounds, frequently walk and sit and continuously stand, frequently stoop, kneel, crouch, and crawl, and continuously reach overhead, sort, shuffle, file paperwork, and push and pull.

In discussing the medical evidence of record pertaining to the Plaintiff's left shoulder pain and tenderness, the ALJ discussed diagnostic imaging contained in the record. [Tr. 20]. Specifically, the Plaintiff's primary care physician, Elie Mansour, M.D., referred the Plaintiff for an MRI of the lumbar spine on June 12, 2007. [Tr. 249]. The MRI revealed moderately severe

8

hypertrophic degenerative arthritis and degenerative disc disease of the lower thoracic spine, mild degenerative arthritic spurring of the lumbar spine, and spina bifida occulta of the lower sacrum. [Id.]. The Plaintiff also underwent an x-ray of her left shoulder at Dr. Mansour's request on July 29, 2009. [Tr. 220]. The x-ray revealed findings consistent with chronic calcific tendonitis or bursitis. [Id.]. The ALJ observed that the Plaintiff's treatment records only addressed left shoulder pain and failed to mention other musculoskeletal pathology that would account for chronic pain or an inability to bend, sit, or stand as alleged. [Tr. 20]. The ALJ also noted that pathology of the Plaintiff's left shoulder was not serious, because the Plaintiff reported to Dr. Summers that she only received conservative treatment, including anti-inflammatory medication, for relief. [Tr. 20].

The ALJ then discussed Dr. Summers' findings, noting that the Plaintiff had reduced range of motion in her left shoulder which would affect her ability "to elevate her left arm overhead on a frequent basis, as well as engage in reaching, pushing, pulling and lifting or carrying greater than 10 pounds with the left upper extremity," but that Dr. Summers "emphasized such limitations are not debilitating in nature and that the claimant is able to tolerate all other work-related activities." [Id.]. The ALJ remarked that Dr. Hartmann's opinion differed in that the Plaintiff was found to have normal range of motion in her shoulder and all other joints throughout her body, yet the Plaintiff was limited to lifting 10 pounds continuously and carrying 10 pounds frequently, but could continuously reach overhead, push and pull, and perform manipulative activities in addition to frequent postural activities. [Id.]. The ALJ adopted Dr. Summers' opinion because it was consistent with the medial evidence and the Plaintiff's daily functioning, and assigned "little weight" to Dr. Hartmann's opinion because it was inconsistent with the evidence of record. [Tr. 21].

9

Case 3:15-cv-00189-TAV-HBG Document 20 Filed 02/05/16 Page 9 of 19 PageID #: 564

As one-time examiners, opinions rendered by consultative examiners are not due any "special degree of deference." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). While ALJs are not bound by such opinions, they may not ignore them either. Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *2 (July 2, 1996). Specifically, the ALJ is required to "explain in the decision the weight given to the opinions of . . . other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us." 20 C.F.R. § 416.927(e)(2)(ii).

The factors applicable for assessing a treating physician's opinion remain relevant factors for evaluating opinions offered by consultative examiners. Id. That is, the degree of weight assigned to an opinion of a consultant examiner is dependent on the supportability of the opinion, consistency of the opinion with other evidence in the record, specialization of the examining source, and other factors which may support or undermine the opinion. § 416.927(c). "The better explanation a source provides for an opinion," and the more relevant evidence a source gives to support the opinion, "particularly medical signs and laboratory findings," the more weight the opinion will be given. § 416.927(c)(3). In addition, "the more consistent an opinion is with the record as a whole, the more weight" the opinion will be entitled to. § 416.927(c)(4).

Contrary to the ALJ's finding, the Plaintiff argues that Dr. Hartmann's opinion is supported by the Plaintiff's June 12, 2007 MRI of her spine and her July 29, 2009 x-ray of her left shoulder. [Doc. 17 at 11]. According to the Plaintiff, these imaging tests, along with Dr. Summers' finding of limited range of motion in the Plaintiff's left shoulder and noted difficulty reaching overhead, pushing, pulling, and lifting greater than 10 pounds, contradict the ALJ's assignment of little weight to Dr. Hartmann's opinion. [Id.]. The Plaintiff also cites complaints

10

of left shoulder pain documented in treatment notes from Dr. Mansour as evidence bolstering Dr. Hartmann's opinion. [Id. (citing Tr. 191, 215, 217)].

The Commissioner argues that Dr. Hartmann's opinion was properly found unsupported by the ALJ because nothing in Dr. Hartmann's examination, which included normal range of motion in all joint areas, supported the assessed limitations. [Doc. 19 at 11]. Rather, Dr. Hartmann's conclusion that the Plaintiff could lift no more than 10 pounds appears to be based upon the Plaintiff's subjective allegations only. [Id.]. Additionally, the Commissioner submits that the Plaintiff's imaging studies do not support her subjective complaints of pain because the Plaintiff never received treatment for any musculoskeletal impairments other than conservative treatment for her tendonitis, examination findings by both consultative examiners found normal range of motion, and the Plaintiff failed to alleged a shoulder impairment in her application for SSI benefits. [Id. at 6-7].

The Court finds substantial evidence supports the ALJ's decision to accord controlling weight to Dr. Summers' opinion rather than Dr. Hartmann. While the Plaintiff argues that imaging studies and complaints of pain documented in Dr. Mansour's treatments notes substantiate Dr. Hartmann's more restrictive opinion, the Court disagrees. Dr. Mansour ordered the June 2007 MRI of the Plaintiff's spine after the Plaintiff related complaints of low back discomfort. [Tr. 205]. However, follow-up treatment notes do not indicate continued complaints of pain, recommended treatment, or functional restrictions. [Tr. 209]. The Plaintiff does not appear to complain of musculoskeletal pain again until June 2009 when she reported left shoulder discomfit from time to time with certain movements. [Tr. 215]. While an x-ray of the Plaintiff's left shoulder performed the following month showed chronic calcific tendonitis or bursitis, follow-up treatment notes again are void of complaints, treatment recommendations, or

11

other concerns regarding the Plaintiff's shoulder. [Tr. 217]. Accordingly, the Court finds that the imaging studies alone do not offer support for the limitations assessed by Dr. Hartmann.

Moreover, nothing in Dr. Hartmann's opinion explains why the Plaintiff was restricted to lifting and carrying up to 10 pounds. Dr. Hartmann's examination findings were unremarkable as the Plaintiff had normal range of motion and full muscle strength throughout. As suggested by the Commissioner, Dr. Hartmann appears to have exclusively relied upon the Plaintiff's self-report in concluding the amount of weight the Plaintiff was capable of lifting. Without some objective evidence corroborating Dr. Hartmann's opinion, the Court cannot say that the ALJ erred as a matter of law in finding the opinion unsupported by the record.

The Court also finds unavailing the Plaintiff's argument that Dr. Summers' opinion could not possibly be given controlling weight because it was rendered prior to the Plaintiff's amended allege onset date. [Doc. 17 at 12]. Specifically, the Plaintiff contends that Dr. Summers' opinion is irrelevant because it was issued in December 2009, three years prior to the Plaintiff's January 23, 2012 amended onset date. [Id.]. The Plaintiff cites this Court's decision in Wilson v. Comm'r of Soc. Sec., No. 3:13-CV-579, 2014 WL 7015615, at *12 (E.D. Tenn. Dec. 11, 2014), in which the Court found "a psychological examination, conducted eight years prior to the alleged onset date and preceding a period in which Plaintiff sustained substantial gainful activity, is irrelevant to the Plaintiff's application." This Court also noted, however, "that not all medical evidence obtained prior to the alleged onset date is necessarily irrelevant." Id. n.1 (internal quotations omitted) (citing DeBoard v. Comm'r of Soc. Sec., 211 F. App'x 411, 414 (6th Cir. 2006) ("We recognize that evidence presented at an earlier hearing or predating the onset of disability, when evaluated in combination with later evidence, may help establish disability.")).

In this case, the ALJ considered all the relevant evidence in the record, including

12

treatment notes and imaging studies that pre-dated as well as post-dated the Plaintiff's amended onset date in arriving at his conclusion. The Plaintiff herself relies on Dr. Summers' opinion, in part, with regard to his findings pertaining to the Plaintiff's limited range of motion in her left shoulder and assessment that she would have difficulty with overhead reaching as well as pushing, pulling, lifting, and carrying with her left arm. [Doc. 17 at 11]. During the administrative hearing, Plaintiff's counsel argued that "[t]he evidence prior to the amended onset date is still relevant" with specific regard to Dr. Summers' opinion. [Tr. 52-53]. Further, the Plaintiff relies on imaging studies and treatment notes from Dr. Mansour, both of which extend back to 2007 and 2009 and pre-date Dr. Summers' opinion, to support her position that the evidence of record substantiates Dr. Hartmann's opinion. Therefore, the Court finds the Plaintiff's argument that the ALJ erred by crediting Dr. Summers' opinion both unsupported and contradicted by the Plaintiff's own reliance on evidence that pre-dates her amended onset date.

Finally, the Court is unpersuaded by the Plaintiff's argument that it was also error for the ALJ to rely on Dr. Summers' opinion because it was internally inconsistent. [Doc. 17 at 12]. In this regard, the Plaintiff's cites to the portion of Dr. Summers' narrative report which states, the Plaintiff "will have difficulty elevating her left arm overhead on a frequent basis as well as reaching/pushing/pulling and lifting/carrying greater than 10 lbs. with her left upper extremity," and interprets it to read that she can only lift or carry up to 10 pounds on a frequent basis. [Id.]. According to the Plaintiff, this statement conflicts with Dr. Summers' medical source statement which articulates that the Plaintiff can lift or carry up to 10 pounds continuously, up to 20 pounds frequently, and up to 50 pounds occasionally with her left arm. [Id.].

The Court finds that the Plaintiff misreads the narrative portion of Dr. Summers' opinion. The placement of "frequent basis" in the sentence only qualifies the frequency in which the

13

Plaintiff can elevate her left arm overhead. To be sure, if Dr. Summers intended to mean that the Plaintiff was also limited on a frequent basis in reaching, pushing, pulling, lifting, and carrying greater than 10 pounds with her left arm, he would have opined as much in his medical source statement rather than find the Plaintiff far less restrictive with each foregoing activity, not just lifting and carrying. [Compare Tr. 295 with Tr. 297-299].

Accordingly, the Court finds the Plaintiff's allegation of error in this regard is not well-taken.

### B. Credibility Determination

Next, the Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence. [Doc. 17 at 13-15]. The ALJ found that the Plaintiff's allegation that she suffered from constant, severe, and daily pain was not fully credible because "the claimant's treatment records only address left shoulder pain stemming from tendonitis and fail to mention other musculoskeletal pathology that would cause chronic pain and interfere with her ability to bend, sit or stand." [Tr. 20]. The ALJ also noted that the Plaintiff's tendonitis had been managed conservatively and only appeared to cause limitations interfering with overhead work or reaching, which her RFC accommodates. [Tr. 21]. Finally, the ALJ observed that the Plaintiff's diabetes mellitus appeared to be uncontrolled at times due to the Plaintiff's noncompliance with taking her blood sugar levels, medication, and exercising. [Id.].

"In evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant." Walters, 127 F.3d at 531. Our appellate court has articulated the standard for evaluating subjective complaints as follows:

> First, we examine whether there is objective medical evidence in an underlying medical condition. If there is, we then examine (1) whether objective medical evidence confirms the severity of the

14

> alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Sec. of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986). In regard to this second prong, "adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." Social Security Ruling 96-7p, 1996 WL 374186, at *2 (1996).

In deciding whether the objective evidence confirms the severity of the alleged pain or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain, the ALJ must consider the following factors: (i) daily activities; (ii) the location, frequency, and intensity of the pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, received or have received for relief of pain or other symptoms; (vi) any measures that are used or were used to relieve pain or other symptoms; (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 1529(c)(3).

An ALJ's findings regarding credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Walters, 127 F.3d at 531.

The Plaintiff submits that her allegations of constant, severe, and recurring pain is supported by the imaging studies of record, particularly the MRI of her spine, which undermines the ALJ's finding that treatment records only address her left shoulder pain. [Doc. 17 at 14].

The Commissioner responds that the imaging studies do not account for the Plaintiff's allegation of pain because she never actually received any treatment for her complaints. [Doc. 19 at 6].

The Court agrees with the Commissioner. As addressed above, while the Plaintiff's MRI revealed moderately severe degenerative arthritis and degenerative disc disease of the lower thoracic spine, the Plaintiff never received any follow-up treatment with Dr. Mansour, nor did Dr. Mansour recommend treatment or note further complaints, complications, or concerns as a result of the MRI findings. Therefore, the ALJ did not err in concluding that treatment records did not support allegations of constant, severe, and daily pain.

The Plaintiff also challenges the ALJ's finding that her tendonitis was managed conservatively and only caused limitations with overhead work or reaching, because both Drs. Summers and Hartmann opined that the Plaintiff was limited to lifting and carrying 10 pounds. [Doc. 17 at 14]. The Commissioner argues that the ALJ's finding is consistent with the Plaintiff's statement to Dr. Summers that she only received conservative treatment in the form of anti-inflammatory medication, which denotes the absence of a disabling condition. [Doc. 19 at 7].

The Court finds no error on the ALJ's part in this regard. First, the Plaintiff reported to Dr. Summers that the only treatment she received for her tendonitis was in the form of anti-inflammatory medication. Conservative treatment, such as mild medication, undermines a claimant's allegation of disabling pain. Ashworth v. Sullivan, 951 F.2d 348, at *7 (6th Cir. 1991) (citing Blacha v. Secretary of Health and Human Serv., 927 F.2d 228, 231 (6th Cir.1990)). Second, and contrary to the Plaintiff's assertion, Dr. Summers did not opine that the Plaintiff could only lift or carry up to 10 pounds. Rather, and as more thoroughly discussed above, Dr. Summers observed that the Plaintiff would have difficultly lifting and carrying greater than 10

16

pounds with her left upper extremity but opined that she could lift or carry up to 10 pounds continuously, up to 20 pounds frequently, and up to 50 pounds occasionally. Although Dr. Hartmann limited the Plaintiff to lifting and carrying no more than 10 pounds, the ALJ rejected Dr. Hartmann's opinion in lieu of Dr. Summers' opinion, a finding this Court has found to be supported by substantial evidence.

Lastly, the Plaintiff argues that the ALJ's credibility determination was flawed because he failed to fully evaluate the Plaintiff's ability to perform daily activities, including difficulty sleeping, doing her hair, cooking, driving, and becoming easily fatigued. [Doc. 17 at 14-15]. The Commissioner counters that a claimant's activities of daily living are only one factor in evaluating complaints of pain, and that the ALJ properly concluded that the Plaintiff was able to complete many other activities. [Doc. 19 at 8].

The Court finds no merit in the Plaintiff's assertion that the ALJ erred by failing to evaluate all of the Plaintiff's daily living activities. The Court of Appeals for the Sixth Circuit has explained that an ALJ's credibility determination need not include an item-by-item analysis of all the factors identified in 20 C.F.R. § 404.1529(c)(3). Bowman v. Chater, No. 96–3990, 1997 WL 764419, at *4 (6th Cir. Nov. 26, 1997) (Table); see also Kornecky v. Comm'r of Soc. Sec., 167 F. App'x 496, 507-08 (6th Cir. 2006) ("[A]n ALJ can consider every piece of evidence without addressing [all the evidence] in his opinion.") The ALJ discounted the Plaintiff's credibility for other appropriate reasons and her daily living activities, as suggested by the Commissioner, were only one factor that the ALJ could consider. Moreover, both Dr. Summers and Dr. Hartmann observed that the Plaintiff was capable of performing daily living activities despite her functional limitations. [Tr. 301, 350].

For the foregoing reasons, the Court finds the Plaintiff's allegation of error in this regard

17

is without merit.

### C. Vocational Hypothetical

Finally, the Plaintiff maintains that the ALJ's step four determination is unsupported by substantial evidence because the hypothetical the ALJ posed to the VE did not accurately reflect all of the Plaintiff's physical limitations. [Doc. 17 at 15]. Specifically, the Plaintiff argues that the hypothetical question did not include Dr. Summers' restriction that the Plaintiff was limited to frequently lifting or carrying up to 10 pounds with her left arm. [Id. at 16].

The Commissioner argues that the hypothetical question need only include the restrictions the ALJ finds credible, and therefore, the ALJ did not need to include a 10 pound lift/carry restriction before relying on the VE's answer. [Doc. 19 at 14].

In order for substantial evidence to support an ALJ's reliance on a VE's answer to a hypothetical question, the question must accurately reflect all of a claimant's physical and mental impairments. Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). As argued by the Commissioner, "[h]ypothetical questions . . . need only to incorporate those limitations which the ALJ has accepted as credible." Parks v. Soc. Sec. Admin., 413 F. App'x 856, 865 (6th Cir. 2011).

The Court finds that the hypothetical question was proper because it included all the limitations the ALJ found to be supported by the record. The ALJ asked the VE to consider the limitations outlined in Dr. Summers' medical source statement [Tr. 47-50], an opinion the ALJ deferred to in determining the Plaintiff's RFC. The ALJ was not obligated to include a 10 pound weight restriction because Dr. Summers neither opined said restriction, nor did the ALJ find said restriction, which is in line with Dr. Hartmann's opinion, credible. Therefore, the Court finds that the hypothetical question accurately reflected all of the Plaintiff's physical limitations,

making it appropriate at step four for the ALJ to rely on the VE's testimony.

Accordingly, the Court finds that Plaintiff's allegation of error unpersuasive.

VI.  **CONCLUSION**

Based upon the foregoing, it is hereby **RECOMMENDED**[1] that the Plaintiff's Motion for Judgment on the Administrative Record [**Doc. 16**] be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 18**] be **GRANTED**.

Respectfully submitted,

_____
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).